## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIANNA LABOY and KARINE LABOY<br>ex rel BABY<br>　　　　Plaintiffs<br><br>v.<br><br>Scott Semple, Commissioner of the Connecticut<br>Department of Correction in his individual<br>capacity; Dr. Nelson, Medical Director for York<br>Correctional; Dr. Tricia Machinski, OB/GYN for<br>York Correctional Institute; UCONN medical staff<br> John/Jane Doe #1; UCONN medical staff John/Jane<br>Doe #2; Antonio Santiago; CO John Doe;<br>CO Jane Doe<br>　　　　all in their individual capacities<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>MARCH 3, 2019<br>: |

## COMPLAINT

### Preliminary Statement

This is a civil rights action filed by Tianna Laboy and Karine Laboy ex rel Baby N.,

for damages under 42 U.S.C. § 1983 and state law negligence, alleging denial and delay in

medical care in violation of the Fourteenth Amendment to the United States Constitution. All

defendants acted with wanton disregard for both Plaintiffs' lives, recklessly and maliciously.

### Subject Matter Jurisdiction and Venue

1. Jurisdiction over Plaintiffs' claims is based on 42 U.S.C. § 1983, 28 U.S.C. § 1331 and

28 U.S.C. § 1343, and 28 U.S.C. § 1367 (pendent claims).

1

2.   Plaintiffs Laboy and Laboy ex rel Baby N. bring this action claiming deprivations of rights to be free from deliberate indifference and cruel and unusual punishment under the Fourteenth Amendment to the Constitution of the United States of America.

3.   Venue in this District is proper under 28 U.S.C. § 1391 because Defendants, at all times relevant to the complaint, are in based in the district and all activities relevant to this complaint occurred in this District.

**Parties**

4.   Plaintiff Tianna Laboy (sometimes "T. Laboy") was an inmate in the custody of the Connecticut Department of Correction ("DOC"). Plaintiff Laboy had inmate number 417372, and was housed in York Correctional Institute ("York").

5.   Plaintiff Karine Laboy ex rel Baby N. is the child of Plaintiff Tianna Laboy, born February 13, 2018 during the period of Plaintiff Tianna Laboy's incarceration at York.

6.   Defendant Scott Semple, at all times relevant to this complaint, was the commissioner of the DOC. Defendant Semple can be properly served at 24 Wolcott Hill Road, Wethersfield, Connecticut 06109.

7.   From approximately 1997 through July 1, 2018, University of Connecticut Medical Center, Correctional Managed Health Care ("CMHC" or sometimes "UConn/CMHC") and DOC were parties to a Memorandum of Agreement ("MOA") that contained the guidelines and criteria for inmates to receive healthcare from CMHC.

8.   Upon information and belief, Defendant Dr. Nelson is a medical doctor who at all relevant times to this action was employed by the CMHC and assigned to oversee medical care at York during the period from August 2017 to February 2018. Dr. Nelson is sued in

his/her individual capacity. He/she can be served at 201 West Main Street, Niantic,
Connecticut 06357.

9.   Defendant Dr. Tricia Machinski is an obstetrics and gynecology specialist who at all
relevant times to this action was employed by the CMHC and assigned to York. Dr.
Machinski is sued in her individual capacity. She can be served at 201 West Main Street,
Niantic, Connecticut 06357

10. Defendant John/Jane Doe #1 is a medical staff member at CMHC assigned to York on
and around February 2018. (S)he is sued in her/his individual capacity.

11. Upon information and belief, Defendant Doe #1 no longer works at York. (S)he can be
served at 201 West Main Street, Niantic, Connecticut 06357.

12. Defendant John/Jane Doe #2 is a medical staff member at CMHC assigned to York on
and around February 2018. (S)he is sued in her/his individual capacity

13. Upon information and belief, Defendant Doe #2 no longer works at York. (S)he can be
served at 201 West Main Street, Niantic, Connecticut 06357.

14. At all times relevant to this complaint, Defendant Antonio Santiago was the warden at
York.

15. Upon information and belief, Defendant Santiago is now the director of Security
Division for the DOC and can be served at 24 Wolcott Hill Road, Wethersfield, Connecticut,
06109.

16. Defendant CO John Doe was assigned to the area of York where Plaintiff Tianna
Laboy was housed between February 11, 2018 and February 13, 2018.

17. Upon information and belief, CO John Doe can be served at 201 West Main Street,
Niantic, Connecticut 06357.

18. Defendant CO Jane Doe was assigned to the area of York where Plaintiff Tianna Laboy was housed between February 11, 2018 and February 13, 2018.

19. Upon information and belief, CO Jane Doe can be served at 201 West Main Street, Niantic, Connecticut 06357.

20. Plaintiffs Laboy and Laboy ex rel Baby N. maintain that the deprivation and violations of their constitutional rights were carried out pursuant to the rules, regulations, customs, policies and practices of Defendant Semple acting under the color of state law, and Defendant Semple knowingly caused the plaintiffs to be deprived of their constitutional rights.

21. Defendant Semple was a supervisor of all corrections officers in the DOC, and his failure to act on information indicating that unconstitutional acts were occurring makes him liable for deliberate indifference.

22. Defendant Semple, as the supervisor of all corrections officers in the DOC, failed to supervise his subordinates who committed such wrongful acts.

23. Plaintiffs Laboy and Laboy ex rel Baby N. can show an affirmative link between Defendant Semple's inaction and the injuries suffered by the plaintiffs.

24. Defendant Semple failed to defer to the opinions of medical professionals like Dr. Kathleen Maurer, who told him inmate medical care was insufficient and likely to lead to irreparable harm to certain incarcerated individuals.

25. Each defendant was acting under color of law at all times relevant to this action.

**Personal Jurisdiction**

26. This Court has personal jurisdiction over all Defendants in this case as this case arises out of federal question jurisdiction, 28 U.S.C. § 1331, for the 42 U.S.C. § 1983 claims, and pendant jurisdiction, 28 U.S.C. § 1367, for the state law claims.

**General Allegations**

27. On or about August 15, 2017, Plaintiff T. Laboy was incarcerated by the DOC at York.

28. York is the women's facility that is part of Connecticut's unified prison system which houses both pre-trial detainees and sentenced inmates. York is located at 201 West Main Street, Niantic, Connecticut.

29. The events in this complaint take place from August 2017 to February 2018 and culminate in the birth of Baby N. in the early hours of the morning of February 13, 2018 on a toilet in a locked cell.

30. Upon Plaintiff T. Laboy's incarceration, she was approximately eight weeks pregnant.

31. Upon information and belief, this was reported to the DOC upon her intake and should have been reported on a Form HR 001 Intake Health Screening, as required by UCONN/CMHC policy and procedure E2.01.

32. Due to the very early stages of Plaintiff T. Laboy's pregnancy, all prenatal care should have been provided by the DOC and UCONN/CMHC.

33. Upon information and belief, UCONN/CMHC policy and procedure G7.01, entitled Perinatal Care, indicates that "In those cases of high-risk pregnancy, specialty care from the community shall be provided to the inmate as needed." The young age of T. Laboy qualifies her pregnancy as potentially high-risk under the community standards of care.[1]

34. Upon information and belief, studies have shown an increased risk of preterm labor, anemia and low birth weight among many other possible complications for adolescent

---

[1] https://www.nichd.nih.gov/health/topics/pregnancy/conditioninfo/high-risk

mothers.[2] There is also an increased risk for still birth, birth asphyxia and birth injury or trauma in young mothers.[3] The World Health Organization, as well as the previously cited studies, identifies adolescent mothers as 10-19 years of age. Ms. Laboy was 19 years old and therefore an adolescent mother at the time of her incarceration and later delivery.

35. Pregnancy is a serious health issue, and Puerto Rican women like Plaintiff T. Laboy suffer significantly higher rates of maternal mortality and infant mortality than their peers.

36. The DOC and CMHC under the supervision of Defendant Semple had an obligation to ensure that policies and procedures were in place and that those policies and procedures were adhered to; to assure that a pregnant adolescent inmate would not give birth in an unsanitary prison cell without any assistance from medical or corrections staff.

37. Upon information and belief, Baby N. suffered injuries as a result of the unassisted birth, four days of unattended labor and a traumatic delivery. Discharge records from Lawrence and Memorial Hospital show that Baby N., spent 14 days in the Neonatal Intensive Care Unit after the birth due to low birth weight, poor feeding and being more than 5 weeks premature.

38. Upon information and belief, CMHC policy and procedure G2.01, entitled Patients with Special Health Needs, states that "Correctional Managed Health Care (CMHC) staff shall ensure that health care services delivered to special needs inmates in the custody of the Connecticut Department of Correction (CDOC) include written individualized treatment

---

[2] Safak Ozdemirci, Taner Kasapoglu, Derya Akdag Cirik, Neslihan Yerebasmaz, Fulya Kayikcioglu & Funda Salgur (2016) Is late adolescence a real risk factor for an adverse outcome of pregnancy?, The Journal of Maternal-Fetal & Neonatal Medicine, 29:20, 3391-3394, DOI: 10.3109/14767058.2015.1130814; Sunullah Soysal, Abdullah Sarioz, Gokce Anik Ilhan, Ali Kocagoz, Aylin Dizi, Ilhan Gursoy, Ipek Celik & Damla Ozmen (2019) Evaluation of late adolescent pregnancies: Is late adolescence a risk factor for preterm labor?, The Journal of Maternal-Fetal & Neonatal Medicine, 32:5, 851-856, DOI: 10.1080/14767058.2017.1393799

[3] Yasmin G, Kumar A, Parihar B. Teenage Pregnancy - Its Impact On Maternal And Fetal Outcome. Int J Sci Study. 2014;1(6):9-13

plans." The policy then goes on to include pregnant inmates as a group included in this policy.

39. Upon information and belief, the community standard of care for medical records is to maintain a unique, individual record for each patient in an organized record-keeping system to ensure that medical records are easily retrievable for review and available for use when needed, including at each patient visit. Records should be stores and maintained at a centralized location accessible to only authorized personnel.

40. Properly maintained and documented medical records have the following characteristics:

- Patient identifiers appear on every piece of documentation
- Entries are legible to others and are recorded in black or blue ink if on paper
- Entries are dated and authenticated by the author
- Documentation is made at the time service is provided
- Documentation must support all codes submitted
- Only standard medical abbreviations should be used in documentation
- All patient encounters are documented
- Documentation of any advance directives is in a prominent part of a patient's medical record

41. Medical records should have the following content:

- Problem list, including significant illnesses and medical conditions
- Medications
- Adverse drug reactions
- Allergies
- Smoking status
- Any history of alcohol use or substance abuse
- Biographical or personal data
- Pertinent history
- Physical exams
- Documentation of clinical findings and evaluation for each visit
- Laboratory and other studies that signify review by the ordering provider
- Working diagnoses consistent with findings and test results
- Treatment plans consistent with diagnoses
- A date for return visits or a follow-up plan for each encounter

- Previous problems addressed in follow-up visits
- A current immunization record
- Preventive services and risk screening

42. Upon information and belief, the community standard of care for medical records since 2012 has been to have electronic medical records.

43. Upon information and belief, CMHC did not institute electronic records until after 2017.

44. Failure to document or maintain relevant data is itself considered a significant breach of and deviation from the standard of care.

45. UConn/CMHC policy and procedure H1.01, entitled Inmate Health Record/Protected Health Information, states that the health record/protected health information ("HR/PHI"):

> shall contain documentation of all health-related treatment/care provided to an inmate during his/her incarceration. Treatment includes, at a minimum, medical, mental health, and dental services and DOC addiction services as well as other treatment delivered to aninmate by a health care provider outside the parameters of the UCHC, CMHC Program or the CDOC.

> Every effort will be made to have the inmate HR/PHI available at the time health services treatment is provided to the inmate.

> The HR/PHI shall be considered a legal document.

> No employee, contractor, or any other person shall remove from a CDOC facility, all, or any part of, an inmate HR/PHI, or copy of an inmate HR/PHI, for personal or private use. This includes facsimile and/or other automated transmission of an inmate HR/PHI to any location or person other than a CDOC facility health services unit, CDOC Central Office Health Services staff, CMHC Program staff, the CDOC Central Records Unit, or the Attorney General's office.

### ***Plaintiff T. Laboy's Pregnancy***

46. Upon information and belief, Plaintiff T. Laboy was seen weekly by Defendant Dr. Tricia Machinski. Her vital signs were taken and Dr. Machinski was able to hear Baby N.'s heartbeat.

47. Upon information and belief, the OB/GYN was only available at York on Mondays, Wednesdays and Fridays, despite serving a population of patients that could go into labor or have another life threatening emergency for either a mother or child at any moment.

48. Plaintiff T. Laboy's pre-natal care did not meet the community standard of care.

49. She suffered from an extreme edema, so much so that her mother Karine Laboy had to send her funds so Plaintiff T. Laboy could buy bigger shoes.

50. Upon information and belief, the edema was explored to determine if there was an underlying cause like preeclampsia.

51. During the course of Plaintiff T. Laboy's she received two ultrasounds.

52. Upon information and belief, Plaintiff T. Laboy was last examined by Dr Machinski, prior to giving birth, on or around February 7, 2018.

53. On or around Friday February 9, 2018, the Plaintiff T. Laboy began experiencing a continuous clear discharge from her vagina along with a mild abdominal discomfort. Her belly had dropped and she suffered from excruciating lower back pain.

54. She reported to "sick call" where she was told that she could see the doctor on Tuesday the 13th.

55. Plaintiff T. Laboy was told by medical staff she could not be seen by medical staff on Friday because she did not come with an appropriate medical form. Plaintiff T. Laboy then filled out a medical request form.

56. Upon information and belief, Dr. Machinski, was not available on the regular OB/GYN day of Friday, nor was there a substitute OB/GYN available.

57. On or around Sunday, February 11, 2018, the discharge became thicker and contained blood.

58. At this time, Plaintiff T. Laboy felt pressure downwards in her lower abdomen/pelvic area. Plaintiff went to see medical but was told she should return if and when her contractions were less than 2 minutes apart.

59. On or around Monday February 12, 2018 at approximately 11:00 p.m., the Plaintiff began having extreme abdominal pain. She felt as if her stomach was twisting inside out. She requested to see medical and was taken by wheelchair two buildings over by an unidentified corrections officer. Reportedly, the nurse on duty provided a cup of water and a heating pad then told Plaintiff T. Laboy to return to her cell, advising that Plaintiff T. Laboy was not in labor.

60. For the remainder of the night, Plaintiff T. Laboy laid awake crying in pain. Upon information and belief, the officers in the area checked on her every 15 minutes but told her there was nothing they could do as medical "didn't want to see her again".

61. Around 4:30 a.m. on Tuesday, February 13, 2018, Plaintiff T. Laboy had a large amount of bloody discharge while using the toilet. She continued to experience extreme abdominal pain. She activated the call button in her cell and again requested to see medical. She was told the doctor would be in at 7:30 a.m. and could see the Plaintiff then.

62. Upon information and belief, around 5:30 a.m. on Tuesday, February 13, 2018, Plaintiff T. Laboy walked to the cafeteria where she attempted to have breakfast. To prevent leakage onto the floor from her labor's continuous, sanguineous discharge, she placed a t-shirt between her legs, since she had no feminine hygiene pads or products available to her.

63. Plaintiff T. Laboy was hungry as she walked to the cafeteria, and she continued to experience labor pains and felt generally unwell. She managed to walk back to her cell only

by using the prison walls for support. The walk back to the cell presented an extraordinary challenge because of the t-shirt between her legs and the extreme discomfort of being in labor.

64. Around 6:30 a.m. on Tuesday, February 13, 2018, Plaintiff T. Laboy sat on the toilet in her locked cell with only her cellmate present. She wanted to change the bloody, discharge soaked t-shirt. She felt like she had to go to the bathroom, and she recalled that her mother told her if she feels that, be careful because it could be the baby coming. Upon sitting down, she realized that her baby was crowning.

65. Upon information and belief, Plaintiff T. Laboy again pushed the call bell for help, yelling that the baby was coming.

66. Upon information and belief, before the corrections staff or medical staff could arrive, Baby N. was born into the toilet.

67. Upon information and belief, Baby N. hit her head as she fell into the toilet. Baby N. was unresponsive after exiting the uterus. At this time, Plaintiff T. Laboy, prompted by her cellmate, picked up Baby N. and "patted her on the back to get all the fluid out." Baby N. began to breathe at this point.

68. Upon the arrival of corrections staff, a code white was called. A code white is a medical emergency within the prison walls.

69. It was several more minutes before medical staff arrived from several buildings away.

70. Upon information and belief, it was several more minutes before the medical staff requested that corrections staff call 911 for an ambulance.

71. Upon information and belief, someone from the prison office staff for Dr. Machinski was present and cut the umbilical cord.

72. Upon information and belief, the medical staff then proceeded to coach Plaintiff T. Laboy to push to deliver the placenta. The placenta was bagged and reportedly transported to Lawrence and Memorial Hospital.

73. Upon information and belief, Plaintiff T. Laboy repeatedly requested assistance and medical care as she believed she was in preterm labor from Friday, February 9, 2018 until the delivery of Baby N. on the morning of Tuesday, February 13, 2018. Plaintiff T. Laboy's requests were ignored.

74. Upon information and belief, from Wednesday, February 7, 2018 to Tuesday February 13, 2018, despite her obvious symptoms of labor, no medical staff arranged for an internal examination of Plaintiff T. Laboy to determine if her cervix was either dilated or effaced, further physical symptoms of impending child birth.

75. Upon her arrival at Lawrence and Memorial Hospital, Plaintiff T. Laboy was shackled to a bed by her ankles for the duration of her four day stay.

76. Plaintiff T. Laboy has undergone extensive treatment and is still being treated for the medical ailments that are a result of her unsanitary delivery.

77. Prior to the delivery of her child, Plaintiff T. Laboy had not discussed or designed a birthing plan with Dr. Machinski or any other medical staff, yet another divergence from the community standard of care.

78. Upon information and belief, prison staff did not meet with Plaintiff T. Laboy to discuss custody of her child, nor was a representative from the Connecticut Department of Children and Families brought in to discuss the matter. It was not until Plaintiff T. Laboy was in the hospital AFTER delivery of her baby that the staff there brought her the necessary paperwork to arrange for the post-discharge care of her baby.

79. At no point in Plaintiff T. Laboy's prenatal care was she taken to a maternity ward, particularly the one at Lawrence and Memorial Hospital, to tour the unit and have the process of delivery explained to her. It is within the community standard of care for such a visit to at least be offered to an expectant mother.

80. The delay in treatment for Ms. T. Laboy after her requests for intervention, resulted in pain, suffering and mental anguish and violated her rights to be free from deliberate indifference and cruel and unusual punishment under the Fourteenth Amendment to the Constitution of the United States of America.

### *Baby N.'s Unlawful Presence in York Correctional Institute*

81. Upon information and belief, normally, prison medical staff and custodial staff arrange for staff from the Department of Children and Families to visit a pregnant mother in jail to plan for the custody of the child well before birth. This did not happen with Plaintiff T. Laboy and Baby N.

82. Pursuant to DOC Administrative Directive 10.6, entitled "Inmate Visits", effective date 10-23-2013, which was effective on February 13, 2018, subsection 3.D. identifies a child as a person under the age of 18.

83. Under the Inmate Visits policy subsection 3.E., a Child Visit in a correctional institution occurs when a child is accompanied by an immediate family member or an authorized adult who is on the approved visiting list.

84. Subsection 4.A.4. of the Inmate Visits policy indicates "A child shall be accompanied by an authorized adult immediate or expanded family member who is on the approved visiting list, legal guardian, an adult properly authorized by the Department of Children and Families,

or an adult approved by the Unit Administrator. Children shall remain under the supervision of the adult visitor at all times while on grounds and during the visit."

85. The DOC violated Administrative Directive 10.6 by allowing Baby N. to be born inside the prison. Baby N. was not accompanied by an authorized adult who was on Plaintiff T. Laboy's visiting list.

86. Baby N., at her birth, was not committed and in the custody of the Connecticut Department of Children and Families under Conn. Gen. Stat. §17a-10.

87. Baby N., at her birth, was not committed and in the custody of the Connecticut Department of Correction under Conn. Gen. Stat. §18-87.

88. At the time of Baby N.'s birth, no court order existed under Conecticut Public Act 11-154 allowing the Department of Correction to place the child in a juvenile detention facility.

89. Plaintiff Karine Laboy ex rel Baby N. expected Baby N. would be born in a hospital.

90. Plaintiff T. Laboy expected Baby N. would be born in a hospital.

91. Because Baby N. was not born in a hospital, she remained in the custody and care of her mother Plaintiff T. Laboy from the moment of birth until appropriate legal determinations and paperwork transferring custody occurred.

92. Upon information and belief, Plaintiff T. Laboy did not temporarily sign over custody of her child until after Baby N. was in Lawrence and Memorial Hospital at least a day later.

93. Plaintiff T. Laboy served as the guardian and enjoyed parental rights over Baby N. from the moment Baby N. was born.

94. The State of Connecticut Court of Probate, District No. PD08, the Berlin Probate Court, officially removed Plaintiff T. Laboy.

95. Berlin Probate Judge Walter A. Clebowicz appointed Karine Laboy guardian of Baby N. July 30, 2018.

### *The Memorandum of Agreement (In Part) Between CMHC and DOC*

96. The Memorandum of Agreement ("MOA") between the DOC and CMHC defined the community standard of care as "Healthcare provided to inmate patients shall be consistent with the generally accepted practice in the State as recognized by healthcare providers in the same or similar general specialty as typically utilized to treat or manage a particular health care condition."

97. DOC Medical Director Dr. Kathleen Maurer testified in a deposition on May 18, 2018 that the community standard of care is important because it provides a consistent pattern of care for patients who are within the responsibility of a care provider.

98. Defendant Semple was made aware and understood that the care being given to inmates by CMHC doctors and medical staff was substandard.

99. Dr. Maurer testified that the DOC had an obligation to ensure that the community standard of care applied to patient care for inmates.

100.      Dr. Maurer further testified that the MOA had an enforcement mechanism including financial holdbacks but the amount of dollars to hold back to insure compliance was very small and that furthermore, holdbacks did not seem to be something that could be done between state agencies.

101.     Dr. Maurer stated under oath that she repeatedly voiced her concern to Defendant Semple that the inmates were not receiving care that met the community standard of care.

102.     Dr. Maurer testified that she reviewed various cases that would come to her attention that raised her concerns about the failure of CMHC to meet the community standard of care.

103.     Delay of care was a repeated concern that came to Dr. Maurer's attention as she reviewed medical cases in the DOC.

104.     Dr. Maurer testified that under the MOA, she had no authority to force CMHC to take corrective action. Dr. Maurer did not know if DOC had the authority to force CMHC to take corrective action.

105.     Dr. Maurer testified that there is a long distance between bad health outcomes and the MOA, but the distance could be travelled.

106.     Dr. Maurer testified that there was essentially no way to hold doctors accountable for their violations of the standard of care.

107.      At one point in time, the problems with healthcare delivery had become apparent within DOC leadership, and the Connecticut General Assembly demanded that the DOC issue a Request for Information ("RFI") to discover new companies that might contract with DOC. Dr. Maurer testified that she continued to ask about the RFI, but after one such meeting, and Defendant Semple responded to her on more than one occasion that "We cannot embarrass our state's flagship university." Dr. Maurer testified that she interpreted Defendant Semple's response that she was to trade inmate health care for UConn's reputation.

108.     Defendant Semple confirmed to journalist Will Healey that he said this to Dr. Maurer. Defendant Semple admitted, in a story published in the *Manchester Journal-Inquirer* on October 27, 2018, Mr. Semple directly confirms he told Defendant Maurer not to embarrass UConn.

109.     Dr. Maurer testified that she had concerns there would be consequences for her if she embarrassed UConn and the health care delivery system within the DOC.

110.     CMHC did periodic peer reviews of its medical staff, but Dr. Maurer realized after time that these peer reviews did not reflect an accurate view of the cases. Dr. Maurer saw after a number of cases that what a security investigation and her own DOC form would consider a violation of the standard of care, Dr. Wu's staff at CMHC when reviewing the same case would say there were no violations of policy and procedure.

111.     As of this point, DOC has not made public any of these investigations.

112.     At some point, Dr. Maurer realized that UConn leadership had influence over DOC management. She was told by Dr. Trestman that there are many standards of care, and she responded to that by asking for exterior peer reviews.

113.     Upon information and belief, when Plaintiff T. Laboy returned to York after a four day stay at Lawrence and Memorial Hospital, on or about February 19, 2018, she met with Defendant Semple. Defendant Semple apologized to Plaintiff T. Laboy for her treatment and advised her that the two medical staff who had been working the overnight from Monday February 12, 2018 to Tuesday February 13, 2018 were "walked out". Plaintiff T. Laboy took this to mean that the employees were fired or otherwise disciplined for the treatment or lack thereof that she received.

114.     A DOC spokesperson acknowledged to the *New London Day* newspaper that the two Defendant Doe staffers knew that Plaintiff T. Laboy was pregnant.[4]

115.     Defendant Semple appeared to acknowledge in a press release that the treatment given to Plaintiff T. Laboy did not meet the standard of care. After the birth of Baby N., Defendant Semple issued a statement "Although the details of this incident are still unfolding, I cannot overstate how seriously this agency takes the health and wellbeing of the offender population. The goal of health services within a correctional environment should always strive to meet the community standard of care."[5]

116.     This is an acknowledgment from Defendant Semple that Plaintiff T. Laboy's pregnancy and the birth of Baby N. while in prison did not meet the standard of care.

117.     Defendant Semple's agency, the DOC issued a statement contemporaneously which said: "The circumstances that led up to a baby being born inside a cell are still under investigation, however preliminary findings have led to two UConn Health, Correctional Managed Health Care employees being told not to report to the facility for work until the investigation is completed."[6] Defendant Semple has not made the results of this investigation public yet, and Plaintiff Tianna Laboy still does not understand the precise nature of the grotesque and reckless breakdowns within the DOC medical and custodial system which led to her birthing her daughter into a toilet in a prison cell.

---

[4] "Birth inside York prison cell prompts DOC probe", February 15, 2018, https://www.theday.com/article/20180215/NWS04/180219605 last checked March 1, 2019
[5] For example, see Flood, Bill, "Baby born in cell at York women's prison, 2 UConn Health employees banned from facility", February 15, 2018, https://fox61.com/2018/02/15/baby-born-in-cell-at-york-correctional-two-uconn-health-employees-banned-from-facility/ last checked March 1, 2019.
[6] See Shay, Jim, "Baby born in Conn. Jail cell; investigation underway", the *Connecticut Post*, February 15, 2018; https://www.ctpost.com/local/article/Baby-born-in-Conn-jail-cell-investigation-under-12616253.php last checked March 1, 2019.

118.     Upon information and belief, however, no complaint with the Connecticut Department of Public Health against Defendant Does #1 and #2 licenses to practice medicine had been filed until February 2019.

119.     On February 20, 2018, Defendant Semple testified before the Connecticut General Assembly's Appropriations Committee and stated: "My concern is about the two nurses that were specifically involved in this particular issue, and the decisions that were made when request was made through the correctional staff --the correctional staff doing what they were trained to do, making the appropriate contact to have medical response down into the housing unit, that ultimate lead to the birth of the child."[7]

120.     All defendants failed to implement and maintain policies, practices and procedures to assure that a pregnant inmate, in obvious labor, would not have a child born in an unsanitary jail cell being attended by insufficiently trained and inexperienced medical staff.

121.     All defendants were deliberately indifferent to Plaintiff T. Laboy's physical, emotional and mental health as each of them, collectively and individually, caused the Plaintiff indignities, insults and injuries that are incompatible with standards of societal decency.

**Count I – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant CMHC medical staff John/Jane Doe #1 in regards to Tianna Laboy**

122.     Paragraphs 1 through 121 are incorporated by reference as if more fully set forth herein.

---

[7] See Transcript, Appropriations Committee Public Hearing, https://www.cga.ct.gov/2018/appdata/chr/pdf/2018APP00220-R001000-CHR.pdf page 44, last checked March 1, 2019.

123.     Upon information and belief, Defendant Doe #1 failed to provide an appropriate level of medical care to Plaintiff T. Laboy.

124.     Upon information and belief, Defendant Doe #1 failed to examine and understand what was happening with Plaintiff T. Laboy.

125.     Defendant Doe #1 knew that there was no oversight by CMHC or DOC over his/her provision of care to Plaintiff T. Laboy, and thus (s)he did not have to do any work on Plaintiff T. Laboy's case because there would be no consequences for him/her if the care Plaintiff T. Laboy received was poor.

126.     Defendant Doe #1 did not utilize an appropriate index of suspicion when examining Plaintiff T. Laboy.

127.     Defendant Doe #1 was consciously aware of the fact that (s)he created or allowed a substantial risk to Plaintiff T. Laboy.

128.     Notwithstanding Defendant Doe #1's conscious awareness of the risks to Plaintiff T. Laboy, (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

129.     Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Doe #1, a medical provider, caused the emergency that resulted in the Plaintiff giving birth to her baby without any pain medication. Additionally, Defendant Doe #1, failed to alleviate the Plaintiff's terrible symptoms of pain, panic and emotional distress Plaintiff T. LABOY experienced by having her baby in an unsanitary jail cell.

130.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby

N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

131.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

132.     Defendant Doe #1 violated the rights of Plaintiff Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment of Plaintiff T. Laboy's pregnancy and subsequent birth of her daughter.

133.     The birth of Baby N. in a jail cell was caused by Defendant Doe #1's unconstitutional actions and inactions alleged herein, and the conditions in which Plaintiff T. Laboy was forced to birth her daughter were beyond all bounds of decency, contrary to the norms of our society as developed over years of medical care provided to pregnant women, and were in violation of her constitutional rights.

134.     As a direct result of Defendant Doe #1's violation of the Plaintiff's constitutional rights, Plaintiff T. Laboy suffered hours of intense pain, worry, trepidation prior to birth, and she has suffered and continues to suffer emotional agony reliving the horrifying jail birth and its medical after effects.

135.     In the manner described above, Defendant Doe #1 subjected the Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count I of this Complaint, Plaintiff Laboy demands judgment against Defendant Doe #1 and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count II - State Law Negligence Against Defendant Doe #1 in regards to Tianna Laboy**

136.     Paragraphs 1 through 135 are incorporated by reference as if more fully set forth herein.

137.     The injuries suffered by Plaintiff T. Laboy were caused by the negligence and failure of Defendant Doe # 1, in the care and treatment of the Plaintiff, to exercise that degree of care and skill ordinarily and customarily used by medical professionals and examining patients who are pregnant and reporting labor symptoms in one of more of the following ways:

       a.   In failing to apply the appropriate standard of care;

       b.   In failing to have an appropriate index of suspicion for the young age of Plaintiff Laboy coupled with her reported symptoms including continuous discharge and extreme abdominal pain;

       c.   In failing to order appropriate analysis of the Plaintiff's complaints timely and by an appropriate facility and medical provider, trained

in caring for pre-birth, during birth and post partum complications of an

adolescent pregnancy;

138.     As a result of Defendant Doe #1's negligence and failure to exercise

reasonable care in the treatment of Plaintiff T. Laboy, she endured unnecessary and wanton

injury, pain and suffering, both physical and psychological, and insult, embarrassment and

indignities.

139.     The injuries and losses suffered by Plaintiff T. Laboy were caused by the

failure of defendant Doe #1 to act with the requisite knowledge, skill and experience to

adequately and properly care for, treat, diagnose, monitor and supervise Plaintiff T. Laboy.

140.     As a result of Defendant Doe #1's negligence and failure to exercise

reasonable care in the treatment of Plaintiff T. Laboy, she has suffered unnecessary injury.


WHEREFORE, on Count II of this Complaint, Plaintiff T. Laboy demands judgment

against Defendant Doe #1 and prays for: (1) compensatory damages; (2) Punitive damages;

(3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.


**Count III–42 U.S.C. §1983 Deliberate Indifference as to Defendant UCONN/CMHC**

**medical staff John/Jane Doe #2 in regards to Tianna Laboy**

141.     Paragraphs 1 through 141 are incorporated by reference as if more fully set

forth herein.

142.     Upon information and belief, Defendant Doe #2 failed to provide an

appropriate level of medical care to Plaintiff T. Laboy.

143.     Upon information and belief, Defendant Doe #2 failed to examine and understand what was happening with Plaintiff T. Laboy.

144.     Defendant Doe #2 knew that there was no oversight by CMHC or DOC over his/her provision of care to Plaintiff T. Laboy, and thus (s)he did not have to do any work on Plaintiff Laboy's case because there would be no consequences for him/her if the care Plaintiff Laboy received was poor.

145.     Defendant Doe #2 did not utilize an appropriate index of suspicion when examining Plaintiff T. Laboy.

146.     Defendant Doe #2 was consciously aware of the fact that (s)he created or allowed a substantial risk to Plaintiff T. Laboy.

147.     Notwithstanding Defendant Doe #2's conscious awareness of the risks to Plaintiff Laboy, (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

148.     Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Doe #2, a medical provider, caused the emergency that resulted in the Plaintiff giving birth to her baby without any pain medication. Additionally, Defendant Doe #2, failed to alleviate the Plaintiff's terrible symptoms of pain, panic and emotional distress the Plaintiff experienced by having her baby in an unsanitary jail cell.

149.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant Medical Doe #2 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

150.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant Medical Doe #2 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

151.     Defendant Doe #2 violated the rights of Plaintiff T. Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment of Plaintiff T. Laboy's pregnancy.

152.     The birth of Baby N. in a jail cell was caused by Defendant Doe #2's unconstitutional actions and inactions alleged herein, and the conditions in which Ms. T. Laboy was forced to birth Baby N. were beyond all bounds of decency, contrary to the norms of our society as developed over years of medical care provided to pregnant women, and were in violation of her constitutional rights.

153.     As a direct result of Defendant Doe #2's violation of the Plaintiff's constitutional rights, Plaintiff T. Laboy suffered hours of intense pain, worry, trepidation prior to birth, and has suffered an continues to suffer emotional agony reliving the horrifying jail birth and medical after effects.

154.     In the manner described above, Defendant Doe #2 subjected the Plaintiff T. Laboy to cruel and unusual punishment and deliberate indifference in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count III of this Complaint, Plaintiff T. Laboy demands judgment against Defendant Doe #2 and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count IV - State Law Negligence Against Defendant Doe #2 in regards to Tianna Laboy**

155.     Paragraphs 1 through 133 are incorporated by reference as if more fully set forth herein.

156.     The injuries suffered by the Plaintiff T. Laboy were caused by the negligence and failure of Defendant Doe # 2, in the care and treatment of the Plaintiff, to exercise that degree of care and skill ordinarily and customarily used by medical professionals and examining patients who are pregnant and reporting labor symptoms in one of more of the following ways:

  a.   In failing to apply the appropriate standard of care;

  b.   In failing to have an appropriate index of suspicion for the young age of Plaintiff T. Laboy coupled with her reported symptoms including continuous discharge and extreme abdominal pain;

  c.   In failing to order appropriate analysis of the Plaintiff's complaints timely and by an appropriate facility and medical provider, trained in caring for pre-birth, during birth and post partum complications of an adolescent pregnancy;

157.     As a result of Defendant Doe #2's negligence and failure to exercise reasonable care in treatment of Plaintiff T. Laboy, she endured unnecessary and wanton

injury, pain and suffering, both physical and psychological, and insult, embarrassment and indignities.

158.     The injuries and losses suffered by Plaintiff T. Laboy were caused by the failure of defendant Doe #2 to act with the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise Ms. T. Laboy.

159.     As a result of Defendant Doe #2's negligence and failure to exercise reasonable care in the treatment of Ms. T. Laboy, she has suffered unnecessary injury.


WHEREFORE, on Count IV of this Complaint, Plaintiff T. Laboy demands judgment against Defendant Doe #2 and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.


**Count V - 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Dr. Nelson in regards to Tianna Laboy**

160.     Paragraphs 1 through 159 are incorporated by reference as if more fully set forth herein.

161.     Upon information and belief, Defendant Dr. Nelson took no action to provide medical assistance to Plaintiff T. Laboy or to transfer her to a facility where she could receive appropriate pre-birth care.

162.     Defendant Dr. Nelson was consciously aware of the fact that (s)he created or allowed a substantial risk to Plaintiff T. Laboy.

163.     Defendant Dr. Nelson could have and should have acted to secure the provision of appropriate medical care for Plaintiff T. Laboy.

27

164.     Notwithstanding Defendant Dr. Nelson's conscious awareness of the risks to Plaintiff Laboy, (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

165.     Defendant Dr. Nelson violated Ms. T. Laboy's Fourteenth Amendment rights by acting with deliberate indifference to her serious medical needs and otherwise subjecting her to inhumane and unsanitary conditions of confinement related to her serious medical need amounting to punishment. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Ms. T. Laboy experienced extreme physical pain and suffering, injury, severe mental anguish, insult and indignities.

166.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant Dr. Nelson intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

167.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant Dr. Nelson intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

168.     Defendant Dr. Nelson violated the rights of Plaintiff T. Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted

standards of care in the care and treatment for Plaintiff T. Laboy during the final stages of her pregnancy.

169.     In the manner described above, Defendant Dr. Nelson subjected Plaintiff T. Laboy to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.


WHEREFORE, on Count V of this Complaint, Plaintiff T. Laboy demands judgment against Defendant Dr. Nelson and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.


**Count VI - 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Dr. Tricia Machinski in regards to Tianna Laboy**

170.     Paragraphs 1 through 170 are incorporated by reference as if more fully set forth herein.

171.     Upon information and belief, Defendant Dr. Machinski took no action to provide medical assistance to Plaintiff T. Laboy or to transfer her to a facility where she could receive appropriate pre-birth care.

172.     Defendant Dr. Machinski was consciously aware of the fact that she created or allowed a substantial risk to Plaintiff T. Laboy.

173.     Defendant Dr. Machinski could have and should have acted to secure the provision of appropriate medical care for Plaintiff T. Laboy.

174.    Notwithstanding Defendant Dr. Machinski's conscious awareness of the risks to Plaintiff T. Laboy, she failed to take necessary and appropriate steps to reduce or eliminate the risk.

175.    Defendant Dr. Machinski violated the rights of Plaintiff T. Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff T. Laboy during the final stages of her pregnancy.

176.    Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant Machinski intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

177.    When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant Machinski intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

178.    In the manner described above, Defendant Dr. Machinski subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the

Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VI of this Complaint, Plaintiff T. Laboy demands judgment against Defendant Dr. Machinski and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count VII – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Santiago in Regards to Tianna Laboy

179.     Paragraphs 1 through 179 are incorporated by reference as if more fully set forth herein.

180.     Upon information and belief, Defendant Santiago knew and understood that Plaintiff T. Laboy was pregnant while in York. Defendant Santiago took no action to provide medical assistance to Plaintiff T. Laboy or to transfer her to a facility where she could receive appropriate pre-birth care.

181.     Defendant Santiago was consciously aware of the fact that he created or allowed a substantial risk to Plaintiff T. Laboy.

182.     Defendant Santiago could have and should have acted to secure the provision of appropriate medical care for Plaintiff T. Laboy.

183.     Notwithstanding Defendant Santiago's conscious awareness of the risks to Plaintiff T. Laboy, Defendant Santiago failed to take necessary and appropriate steps to reduce or eliminate the risk.

184.     Defendant Santiago maintained unconstitutional policies, procedures and customs, including constitutionally inadequate policies and procedures for managing individuals who were suffering the obvious signs and symptoms of late term pregnancy and labor; and constitutionally inadequate policies and procedures related to communication among its medical providers and between its medical providers and detention personnel regarding inmates who are at a risk of suffering a serious risk of harm and injury.

185.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant Santiago intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

186.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant Santiago intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

187.     Defendant Santiago violated the rights of Plaintiff Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff T. Laboy during the final stages of her pregnancy.

188.    In the manner described above, Defendant Santiago subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VII of this Complaint, Plaintiff T. Laboy demands judgment against Defendant Santiago and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count VIII – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant CO John Doe in Regards to Tianna Laboy

189.    Paragraphs 1 through 188 are incorporated by reference as if more fully set forth herein.

190.    Upon information and belief, Defendant CO John Doe knew Plaintiff T. Laboy was pregnant. Defendant CO John Doe took no action to provide medical assistance to Plaintiff T. Laboy or to transfer her to a facility where she could receive appropriate pre-birth care.

191.    Defendant CO John Doe was consciously aware of the fact that he created or allowed a substantial risk to Plaintiff T. Laboy.

192.    Upon information and belief, Defendant CO Jane Doe, was on duty in the area housing Plaintiff T. Laboy the night of February 12th 2018.

193.    Upon information and belief, Defendant CO Jane Doe did rounds every 15 minutes and saw Plaintiff T. Laboy awake and crying in pain in her bunk yet did nothing to obtain

medical care, activate a code white or activate 911 to obtain medical care for Plaintiff T. Laboy or her baby.

194.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant CO John Doe #1 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

195.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant CO John Doe #1 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

196.     Defendant CO John Doe could have and should have acted to secure the provision of appropriate medical care for Plaintiff T. Laboy.

197.     Notwithstanding Defendant CO John Doe's conscious awareness of the risks to Plaintiff T. Laboy, he failed to take necessary and appropriate steps to reduce or eliminate the risk.

198.     Upon information and belief, CO John Doe told the Plaintiff that he wanted to help and believed she needed medical attention but did not call a code white, or activate 911 to obtain medical services when the on-site services failed to provide adequate medical care to Plaintiff Laboy and her baby.

199.     Defendant CO John Doe violated the rights of Plaintiff T. Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy.

200.     In the manner described above, Defendant CO John Doe subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count VIII of this Complaint, Plaintiff T. Laboy demands judgment against Defendant CO John Doe and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count IX – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant CO Jane Doe in Regards to Tianna Laboy

201.     Paragraphs 1 through 200 are incorporated by reference as if more fully set forth herein.

202.     Upon information and belief, Defendant CO Jane Doe knew Plaintiff T. Laboy was pregnant and in actual distress. Defendant CO Jane Doe took no action to provide medical assistance to Plaintiff T. Laboy or to transfer her to a facility where she could receive appropriate pre-birth care.

203.     Defendant CO Jane Doe was consciously aware of the fact that she created or allowed a substantial risk to Plaintiff T. Laboy.

204.     Defendant CO Jane Doe could have and should have acted to secure the provision of appropriate medical care for Plaintiff T. Laboy.

205.     Upon information and belief, Defendant CO Jane Doe, was on duty in the area housing Plaintiff T. Laboy the night of February 12th 2018.

206.     Upon information and belief, Defendant CO Jane Doe did rounds every 15 minutes and saw Plaintiff T. Laboy awake and crying in pain in her bunk yet did nothing to obtain medical care, activate a code white or activate 911 to obtain medical care for Plaintiff T. Laboy or her baby.

207.     Notwithstanding Defendant CO Jane Doe's conscious awareness of the risks to Plaintiff T. Laboy, she failed to take necessary and appropriate steps to reduce or eliminate the risk.

208.     Notwithstanding the obvious, emergent, and readily recognizable symptoms of labor suffered by the Plaintiff from Friday February 9, 2018, the Defendant CO Doe #2 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused Plaintiff T. Laboy's requests for attended hospital pre-birth care that every mother and child expect in our society as a decent and dignified means of delivering a child.

209.     When confronted with the information noted above regarding the Plaintiff's readily recognizable symptoms of late labor and emergent birth, the Defendant CO Doe #2 intentionally and with a reckless disregard of serious risks to the health and well-being of the Plaintiff and Baby N., refused the Plaintiff's Fourteenth Amendment constitutional right to a

decent and dignified means of delivering her child in a facility staffed with personnel well trained and experience in the delivery of a child in a carefully sanitized environment.

210.     Defendant CO Jane Doe violated the rights of Plaintiff T. Laboy under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy.

211.     In the manner described above, Defendant CO Jane Doe subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.


WHEREFORE, on Count IX of this Complaint, Plaintiff T. Laboy demands judgment against Defendant CO Jane Doe and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.


**Count X – 42 U.S.C. § 1983 False Imprisonment as to Defendant Santiago in regards to Karine Laboy ex rel Baby N.**


212.     Paragraphs 1 through 211 are incorporated by reference as if more fully set forth herein.

213.     Plaintiff T. Laboy, while enjoying the legal status as Baby N.'s mother, did not consent to Baby N.'s imprisonment.

214.     Plaintiff T. Laboy did not want Baby N. to be born in York.

215.     Plaintiff T. Laboy, while enjoying the legal status as Baby N. mother, knew that Baby N. could not leave York.

216.     No section of the Connecticut General Statutes or of the Connecticut Department of Correction regulations or administrative detentions allows for a newborn to be in a prison cell at York.

217.     By the DOC's own Administrative Directives, Baby N. was unlawfully and illegally inside of York.

218.     Defendant Santiago had no legal justification to place Baby N. in the custody of the DOC.

219.     Defendant Santiago willfully detained Baby N. inside York.

220.     Defendant Santiago, by his actions, intended to detain Baby N. As stated previously, Defendant Santiago understood the pregnant inmate confined to York was going to give birth at some point.

221.     By Defendant Santiago's failure to adequately supervise his staff and appropriately prepare for the consequences of Plaintiff T. Laboy's pregnancy, Defendant Santiago intended that Baby N. would be born while in prison.

222.     Plaintiff T. Laboy and Defendant Santiago knew that Baby N. was not able to leave the prison.

223.     Baby N. did not choose to be born in a prison.

224.     Defendant Santiago had no probable cause to place Baby N. in a prison .

225.     Plaintiff Karine Laboy ex rel Baby N. could not merely walk into York to take her granddaughter out of York on February 13, 2018.

226.     In the manner described above, Defendant Santiago violated the rights of Plaintiff Karine Laboy ex rel Baby N. to be free from false imprisonment as those rights are secured by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count X of this Complaint, Plaintiff Karine Laboy ex rel Baby N. demands judgment against Defendant Santiago and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XI – 42 U.S.C. § 1983 False Imprisonment as to Defendant CO Jane Doe in regards to Karine Laboy ex rel Baby N.**

227.     Paragraphs 1 through 211 are incorporated by reference as if more fully set forth herein.

228.     By the DOC's own Administrative Directives, Baby N. was unlawfully and illegally inside of York.

229.     Defendant CO Jane Doe had no legal justification to place Baby N. in the custody of the DOC.

230.     Defendant CO Jane Doe willfully detained Baby N. inside York.

231.     Defendant CO Jane Doe, by her actions, intended to detain Baby N. As stated previously, Defendant CO Jane Doe understood the pregnant inmate confined to York was going to give birth at some point.

232.     Defendant CO Jane Doe, upon hearing the labor pains of Plaintiff T. Laboy, intended that Baby N. would be born while in prison.

233.     Plaintiff T. Laboy and Defendant CO Jane Doe knew that Baby N. was not able to leave the prison.

234.     Baby N. did not choose to be born in a prison.

235.     Defendant CO Jane Doe had no probable cause to place Baby N. in a prison.

236.     Plaintiff Karine Laboy ex rel Baby N. could not merely walk into York to take her granddaughter out of York on February 13, 2018.

237.     In the manner described above, Defendant CO Jane Doe violated the rights of Plaintiff Karine Laboy ex rel Baby N. to be free from false imprisonment as those rights are secured by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XI of this Complaint, Plaintiff Karine Laboy ex rel Baby N. demands judgment against Defendant CO Jane Doe and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XII – 42 U.S.C. § 1983 False Imprisonment as to Defendant CO John Doe in regards to Karine Laboy ex rel Baby N.**

238.     Paragraphs 1 through 237 are incorporated by reference as if more fully set forth herein.

239.     By the DOC's own Administrative Directives, Baby N. was unlawfully and illegally inside of York.

240.     Defendant CO John Doe had no legal justification to place Baby N. in the custody of the DOC.

241.     Defendant CO John Doe willfully detained Baby N. inside York.

242.     Defendant CO John Doe, by her actions, intended to detain Baby N. As stated previously, Defendant CO John Doe understood the pregnant inmate confined to York was going to give birth at some point.

243.     Defendant CO John Doe, upon hearing the labor pains of Plaintiff T. Laboy, intended that Baby N. would be born while in prison.

244.     Plaintiff T. Laboy and Defendant CO John Doe knew that Baby N. was not able to leave the prison.

245.     Baby N. did not choose to be born in a prison.

246.     Defendant CO John Doe had no probable cause to place Baby N. in a prison.

247.     Plaintiff Karine Laboy ex rel Baby N. could not merely walk into York to take her granddaughter out of York on February 13, 2018.

248.     In the manner described above, Defendant CO John Doe violated the rights of Plaintiff Karine Laboy ex rel Baby N. to be free from false imprisonment as those rights are secured by the Fourth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XII of this Complaint, Plaintiff Karine Laboy ex rel Baby N. demands judgment against Defendant CO John Doe and prays for: (1) compensatory

damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XIII – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Medical John Doe #1 in regards to Karine Laboy ex rel Baby N.**

249.     Paragraphs 1 through 248 are incorporated by reference as if more fully set forth herein.

250.     Upon information and belief, Defendant Medical Doe #1 failed to provide an appropriate level of medical care to Baby N., both pre-birth and during birth.

251.     Defendant Doe #1 knew that there was no oversight by CMHC or DOC over his/her provision of care to Baby N. both pre-birth and during birth, and thus (s)he did not have to do any work on Plaintiff T. Laboy's case because there would be no consequences for him/her if the care Plaintiff T. Laboy and Baby N. were shocking.

252.     Defendant Doe #1 did not utilize an appropriate index of suspicion when examining Plaintiff T. Laboy to ensure Baby N. received a reasonable standard of care.

253.     Defendant Doe #1 was consciously aware of the fact that (s)he created or allowed a substantial risk to Baby N. both pre-birth and during birth.

254.     Notwithstanding Defendant Doe #1's conscious awareness of the risks to Baby N., (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

255.     Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Doe #1, a medical provider, caused the emergency that resulted in Baby N. being born into extraordinarily unsanitary and dangerous conditions to infant life.

256.     At this point, Plaintiff Karine Laboy ex rel Baby N. cannot be certain what damage this failure to monitor Baby N.'s heart rate during four days of active labor has had on Baby N., and if there will be permanent damage to Baby N. from the circumstances of her birth.

257.     Immediately after birth, the failure of Defendant Medical Doe #1 to be there, or to have monitored the four days of active labor appropriately so that Baby N. could have pediatric care upon birth is a breach of a standard of care, and put Baby N. in extraordinary harm.

258.     Defendant Medical Doe #1 violated the rights of Plaintiff Karine Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment of Baby N., pre-birth, during birth and after birth. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

259.     In the manner described above, Defendant Doe #1 subjected the Plaintiff, Karine Laboy ex rel Baby N., to cruel and unusual punishment and deliberate indifference in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.


WHEREFORE, on Count XIII of this Complaint, Plaintiff Laboy ex rel Baby demands judgment against Defendant Medical Doe #1 and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XIV –42 U.S.C. §1983 Deliberate Indifference as to Defendant UCONN/CMHC medical staff John/Jane Doe #2 in regards to Karine Laboy ex rel Baby**

260.    Paragraphs 1 through 259 are incorporated by reference as if more fully set forth herein.

261.    Upon information and belief, Defendant Medical Doe #2 failed to provide an appropriate level of medical care to Plaintiff Laboy ex rel Baby.

262.    Upon information and belief, Defendant Medical Doe #2 failed to examine and understand what was happening with Plaintiff Laboy ex rel Baby.

263.    Defendant Medical Doe #2 knew that there was no oversight by CMHC or DOC over his/her provision of care to Plaintiff Laboy ex rel Baby N., and thus (s)he did not have to do any work for Baby N.'s case because there would be no consequences for him/her if the care Plaintiff Laboy ex rel Baby N. received were shocking.

264.    Defendant Medical Doe #2 did not utilize an appropriate index of suspicion when examining Plaintiff T. Laboy in regards to Baby N.'s health.

265.    Defendant Medical Doe #2 was consciously aware of the fact that (s)he created or allowed a substantial risk to Plaintiff Laboy ex rel Baby N.

266.    Notwithstanding Defendant Medical Doe #2's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

267.    Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Medical Doe #2, a medical provider, caused the emergency that resulted in Baby N. being born into extraordinarily unsanitary and dangerous conditions to infant life.

268.    At this point, Plaintiff Karine Laboy ex rel Baby N. cannot be certain what damage this failure to monitor Baby N.'s heart rate during four days of active labor has had on Baby N., and if there will be permanent damage to Baby N. from the circumstances of her birth.

269.    Immediately after birth, the failure of Defendant Medical Doe #2 to be there, or to have monitored the four days of active labor appropriately so that Baby N. could have pediatric care upon birth is a breach of a standard of care, and put Baby N. in extraordinary harm.

270.    Defendant Medical Doe #2 violated the rights of Plaintiff Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment of Baby N. at the start of her life. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

271.    In the manner described above, Defendant Medical Doe #2 subjected the Plaintiff Karine Laboy ex rel Baby N. to cruel and unusual punishment and deliberate indifference in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XIV of this Complaint, Plaintiff Laboy ex rel Baby N. demands judgment against Defendant Doe #2 and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XV - 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Dr. Nelson in regards to Karine Laboy ex rel Baby N.**

272.       Paragraphs 1 through 196 are incorporated by reference as if more fully set forth herein.

273.       Upon information and belief, Defendant Dr. Nelson took no action to provide medical assistance to Plaintiff Laboy ex rel Baby N. or to transfer Plaintiff Laboy to a facility where she could receive appropriate pre-birth, during birth, and post birth care.

274.       Defendant Dr. Nelson was consciously aware of the fact that (s)he created or allowed a substantial risk to Plaintiff Laboy ex rel Baby N.

275.       Defendant Dr. Nelson could have and should have acted to secure the provision of appropriate medical care for Plaintiff Laboy ex rel Baby N.

276.       Notwithstanding Defendant Nelson's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., (s)he failed to take necessary and appropriate steps to reduce or eliminate the risk.

277.       Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Dr. Nelson, a medical provider, caused the emergency that resulted in Baby N. being born into extraordinarily unsanitary and dangerous conditions to infant life.

278.     At this point, Plaintiff Karine Laboy ex rel Baby N. cannot be certain what damage this failure to monitor Baby N.'s heart rate during four days of active labor has had on Baby N., and if there will be permanent damage to Baby N. from the circumstances of her birth.

279.     Immediately after birth, the failure of Defendant Dr. Nelson to be there, or to have monitored the four days of active labor appropriately so that Baby N. could have pediatric care upon birth is a breach of a standard of care, and put Baby N. in extraordinary harm.

280.     Defendant Dr. Nelson violated Plaintiff Laboy ex rel Baby N.'s Fourteenth Amendment rights by acting with deliberate indifference to her serious medical needs and otherwise subjecting her to inhumane and unsanitary conditions of confinement related to her serious medical need amounting to punishment. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

281.     Defendant Dr. Nelson violated the rights of Plaintiff Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy.

282.     In the manner described above, Defendant Dr. Nelson subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XV of this Complaint, Plaintiff Laboy ex rel Baby N. demands judgment against Defendant Dr. Nelson and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XV - 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Dr. Tricia Machinski in regards to Karine Laboy ex rel Baby N.**

283.     Paragraphs 1 through 282 are incorporated by reference as if more fully set forth herein.

284.     Upon information and belief, Defendant Dr. Machinski took no action to provide medical assistance to Plaintiff Laboy or to transfer her to a facility where she could receive appropriate pre-birth care for Baby N.

285.     Defendant Dr. Machinski was consciously aware of the fact that she created or allowed a substantial risk to Plaintiff Laboy and Plaintiff Laboy ex rel Baby N. by extension.

286.     Defendant Dr. Machinski could have and should have acted to secure the provision of appropriate medical care for Plaintiff Laboy ex rel Baby N.

287.     Notwithstanding Defendant Dr. Machinski's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., she failed to take necessary and appropriate steps to reduce or eliminate the risk.

288.     Defendant Dr. Machinski violated the rights of Plaintiff Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing

48

from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy and by extension, Plaintiff Laboy's baby.

289.     Despite knowing the serious risks associated with the symptoms of labor noted, Defendant Dr. Machinski, a medical provider, caused the emergency that resulted in Baby N. being born into extraordinarily unsanitary and dangerous conditions to infant life.

290.     At this point, Plaintiff Karine Laboy ex rel Baby N. cannot be certain what damage this failure to monitor Baby N.'s heart rate during four days of active labor has had on Baby N., and if there will be permanent damage to Baby N. from the circumstances of her birth.

291.     Immediately after birth, the failure of Defendant Dr. Machinski to be there, or to have monitored the four days of active labor appropriately so that Baby N. could have pediatric care upon birth is a breach of a standard of care, and put Baby N. in extraordinary harm.

292.     Defendant Dr. Machinski violated Plaintiff Laboy ex rel Baby N.'s Fourteenth Amendment rights by acting with deliberate indifference to her serious medical needs and otherwise subjecting her to inhumane and unsanitary conditions of confinement related to her serious medical need amounting to punishment. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

293.     In the manner described above, Defendant Dr. Machinski subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XV of this Complaint, Plaintiff Laboy ex rel Baby demands judgment against Defendant Dr. Machinski and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count XVI – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant Santiago in regards to Karine Laboy ex rel Baby N.

294.     Paragraphs 1 through 293 are incorporated by reference as if more fully set forth herein.

295.     Upon information and belief, Defendant Santiago took no action to provide medical assistance to Plaintiff Laboy ex rel Baby N. or to transfer Plaintiff Laboy to a facility where she could receive appropriate pre-birth, during birth and post birth care and where Baby N. could be monitored and receive appropriate pediatric care.

296.     Upon information and belief, York does not have a pediatrician.

297.     Defendant Santiago was consciously aware of the fact that he created or allowed a substantial risk to Plaintiff Laboy ex rel Baby N.

298.     Defendant Santiago could have and should have acted to secure the provision of appropriate medical care for Plaintiff Laboy ex rel Baby N.

299.     Notwithstanding Defendant Santiago's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., he failed to take necessary and appropriate steps to reduce or eliminate the risk.

300.     Defendant Santiago maintained unconstitutional policies, procedures and customs, including constitutionally inadequate policies and procedures for managing individuals who were

suffering the obvious signs and symptoms of late term pregnancy and labor; and constitutionally inadequate policies and procedures related to communication among its medical providers and between its medical providers and detention personnel regarding inmates who are at a risk of suffering a serious risk of harm and injury.

301.     At this point, Plaintiff Karine Laboy ex rel Baby N. cannot be certain what damage this failure to monitor Baby N.'s heart rate during four days of active labor has had on Baby N., and if there will be permanent damage to Baby N. from the circumstances of her birth.

302.     Defendant Santiago acted in a manner that ignored and disregarded Baby N.'s serious medical needs and subjected her to inhumane and unsanitary conditions related to her confinement that amounted to extrajudicial punishment.

303.     Defendant Santiago violated the rights of Plaintiff Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

304.     In the manner described above, Defendant Santiago subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.


WHEREFORE, on Count XVI of this Complaint, Plaintiff Laboy ex rel Baby N. demands judgment against Defendant Santiago and prays for: (1) compensatory damages; (2)

punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count XVII – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant CO John Doe in Regards to Karine Laboy ex rel Baby N.

305.     Paragraphs 1 through 304 are incorporated by reference as if more fully set forth herein.

306.     Upon information and belief, Defendant CO John Doe took no action to provide medical assistance to Plaintiff Laboy or to transfer her to a facility where she could receive appropriate pre-birth care for Baby N.

307.     Defendant CO John Doe was consciously aware of the fact or should have been aware of the fact that he created or allowed a substantial risk to Plaintiff Laboy ex rel Baby N. for failing to provide her mother, Plaintiff Laboy, with adequate medical care.

308.     Defendant CO John Doe could have and should have acted to secure the provision of appropriate medical care for Plaintiff Laboy ex rel Baby N.

309.     Notwithstanding Defendant CO John Doe's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., he failed to take necessary and appropriate steps to reduce or eliminate the risk.

310.     Upon information and belief, CO John Doe told the Plaintiff that he wanted to help and believed she needed medical attention but did not call a code white, or activate 911 to obtain medical services when the on-site services failed to provide adequate medical care to Plaintiff Laboy and Baby N.

311.     Defendant CO John Doe violated the rights of Plaintiff Laboy ex rel Baby N. under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy.

312.     As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

313.     In the manner described above, Defendant CO John Doe subjected Plaintiff Karine Laboy ex rel Baby N. to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XVII of this Complaint, Plaintiff Laboy ex rel Baby demands judgment against Defendant CO John Doe and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XVIII – 42 U.S.C. § 1983 Deliberate Indifference as to Defendant CO Jane Doe in Regards to Karine Laboy ex rel Baby N.**

314.     Paragraphs 1 through 313 are incorporated by reference as if more fully set forth herein.

315.     Upon information and belief, Defendant CO Jane Doe took no action to provide medical assistance to Plaintiff Laboy or to transfer her to a facility where she could receive appropriate pre-birth care for Baby N.'s health and well-being.

316.     Defendant CO Jane Doe was consciously aware of the fact or should have been aware of the fact that she created or allowed a substantial risk to Plaintiff Laboy ex rel Baby N. for failing to provide her mother, Plaintiff Laboy, with adequate medical care.

317.     Defendant CO Jane Doe could have and should have acted to secure the provision of appropriate medical care for Plaintiff Laboy ex rel Baby N.

318.     Upon information and belief, Defendant CO Jane Doe, was on duty in the area housing Plaintiff Laboy the night of February 12th 2018.

319.     Upon information and belief, Defendant CO Jane Doe did rounds every 15 minutes and saw Plaintiff Laboy awake and crying in pain in her bunk, yet did nothing to obtain medical care, activate a code white or activate 911 to obtain medical care for Plaintiff Laboy or Baby N.

320.     Notwithstanding Defendant CO Jane Doe's conscious awareness of the risks to Plaintiff Laboy ex rel Baby N., she failed to take necessary and appropriate steps to reduce or eliminate the risk to Baby N.

321.     Defendant CO Jane Doe violated the rights of Plaintiff Laboy ex rel Baby under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment for Plaintiff Laboy during the final stages of her pregnancy.

322.     As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

323.     In the manner described above, Defendant CO Jane Doe subjected the plaintiff to cruel and unusual punishment in violation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XVIII of this Complaint, Plaintiff Laboy ex rel Baby demands judgment against Defendant CO Jane Doe and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Count XIX - 42 U.S.C. § 1983 Deliberate Indifference Failure to Supervise as to Scott Semple in regards to Plaintiff Tianna Laboy**

324.     Paragraphs 1 through 322 are incorporated by reference as if more fully set forth herein.

325.     In 2014, after serving as warden of the state's mental health prison, on or about August 29, 2014 Defendant Semple was named deputy commissioner for operations and rehabilitative services in the DOC. In this role, Defendant Semple oversaw the daily operations of the 15 correctional facilities in Connecticut.

326.     This experience gave Defendant Semple a wealth of knowledge about the shortcomings of the health care delivery system in the DOC.

327.     Defendant Semple was first named acting commissioner of the state's largest agency, the DOC, in August 2014 by Governor Dannell P. Malloy.

328.     Governor Malloy named Defendant Semple commissioner of the DOC permanently on January 21, 2015.

329.     Connecticut General Statutes § 18-81 designates the Commissioner of the DOC with responsibility to oversee all aspects of service to inmates in DOC custody, including healthcare.

330.     To accomplish this aim, the MOA between the DOC and the UCHC for the Provision of Health Services to Offenders through Correctional Managed Health Care was first created in 1997.

331.     Defendant Semple knew the DOC lacked sufficient management and informational tools to manage, monitor and evaluate the performance of UConn/CMHC under the MOA.

332.     Defendant Semple never supervised or instructed anyone on his staff to create and establish sufficient management and informational tools to manage, monitor and evaluate the performance of UConn/CMHC under the MOA.

333.     Defendant Semple knew the MOA was not defined in sufficient detail to specify the services to be provided by UConn/CMHC and the performance standards for assessing UConn/CMHC's compliance.

334.     Defendant Semple never supervised or instructed anyone on his staff to define in sufficient detail the specific services to be provided by UConn/CMHC and Defendant

Semple never instructed or supervised anyone on his staff to draft and establish appropriate performance standards for assessing UConn/CMHC's compliance.

335.     Defendant Semple knew that the contractual terms and performance standards in the MOA were vague and could not establish measurable and verifiable performance standards for compliance.

336.     Defendant Semple never supervised or instructed anyone on his staff to draft, establish and implement measurable and verifiable performance standards for compliance with the MOA.

337.     Defendant Semple was tasked with attending executive committee and management committee meetings, but during the times at issue, these meetings were held irregularly, and Defendant Semple did not attend them regularly.

338.     Defendant Semple never trained or supervised anyone to attend those meetings and implement proper management structures for the MOA.

339.     Defendant Semple knew that the budget in the MOA was inadequate for managing the healthcare cost of more than 14,000 inmates.

340.     Defendant Semple knew that UConn/CMHC, in the case of inmate deaths, was allowed to evaluate its own performance. Defendant Semple knew that an effective MOA would include an independent review of death cases.

341.     Upon information and belief, Defendant Semple only initiated an independent review of death cases at the insistence of Dr. Maurer, and when Defendant Semple did initiate the independent review of death cases, as alleged previously, Defendant Semple purposely hid the results behind the attorney-client privilege to avoid the bad publicity associated with the DOC failing to provide appropriate care to inmates in its custody.

342.     Defendant Semple knew that DOC had never reviewed many parts of the MOA, and only assumed that UConn/CMHC was complying with the provisions of the MOA.

343.     Defendant Semple never instructed or trained anyone on his staff to review all aspects of compliance with the MOA.

344.     Defendant Semple knew that DOC was not managing the UConn/CMHC MOA with appropriate diligence.

345.     Defendant Semple never instructed or trained anyone on his staff to manage the MOA with appropriate diligence.

346.     Defendant Semple knew that the absence of measureable performance standards prevented DOC from assessing UConn/CMHC's performance, and subjected the DOC to liability for failure to provide care.

347.     Defendant Semple never instructed or trained anyone on his staff to implement measureable performance standards into the MOA.

348.     Collectively, all of Defendant Semple's failures with regards to oversight of the MOA created a lax atmosphere of noncompliance, and wanton and willful disregard for human life within the UConn/CMHC. Defendant Semple needed to have implemented better supervision in the course of managing and implementing the MOA in order to prevent injuries such as sustained by Ms. Laboy and her baby.

349.     Defendant Semple tolerated and consistently ratified unconstitutional customs and practices that denied inmates and detainees their constitutional rights to adequate medical care for serious medical conditions.

350.     Defendant Semple did not want to offend the University of Connecticut and implement effective monitoring of the MOA. Defendant Semple told Dr. Maurer not to

embarrass the state's flagship institution, which is the University of Connecticut. Defendant Semple told Dr. Maurer to place the school's reputation over that of inmate health care.

351.     Defendant Semple failed to supervise employees under his control who could have and should have been implementing effective monitoring of the MOA.

352.     The MOA was repeatedly extended by amendments, and on April 10, 2013, the Department of Correction extended it through June 30, 2015.

353.     Defendant Semple was regularly made aware by Department of Correction personnel, including Dr. Maurer, that the MOA was unenforceable, poorly written and was a direct cause of inmates in the care and custody of the DOC receiving subpar medical treatment that was known to endanger human life.

354.     In 2012, Defendant Semple was part of a committee that helped draft a strategic plan for UConn/CMHC. This strategic plan noted extensive challenges with the delivery of inmate healthcare.

355.     Nevertheless, the 2015 Strategic Plan for the Department of Correction does not even mention the word health care.[8]

356.     Nevertheless, on June 26, 2015, despite Defendant Semple's awareness of the unenforceability of the MOA, and despite his first-hand knowledge of the regular, repeated failures of UConn/CMHC to provide adequate care to inmates, Defendant Semple instructed deputy commissioner Cheryl Cepelak to extend the MOA.

357.     Defendant Semple knew that by signing this extension, he was endangering the safety of inmates like Tianna Laboy and her baby.

---

[8]http://portal.ct.gov/DOC/Common-Elements/Common-Elements/Publications

358.    Defendant Semple knew that inmates received inadequate care from the medical system he oversaw, yet Defendant Semple continued to engage UConn/CMHC as the main care provider for inmates like Plaintiff Laboy and her baby.

359.    Defendant Semple's failure to supervise employees properly regarding the implementation of the MOA directly resulted in the injuries to Ms. Laboy and her baby.

360.    The numerous violations of the community standard of care that UConn/CMHC subjected Ms. Laboy and Baby N. to were a direct result of Defendant Semple's continued failure to oversee and monitor the MOA properly.

361.    Defendant Semple knew that failure to measure the performance of UConn/CMHC under the MOA presented inmates with life threatening dangerous conditions, but Defendant Semple did not act.

362.    Defendant Semple's failure to act with the knowledge that his failure to act placed inmate in grave danger constituted deliberate indifference.

363.    Plaintiff Tianna Laboy and Plaintiff Karine Laboy ex rel Baby N. were damaged by Defendant Semple's deliberate indifference.

364.    Ms Laboy and her Baby N. are entirely foreseeable victims of Defendant Semple's deliberate indifference and Defendant Semple's failure to supervise his staff regarding the implementation of the MOA. The only way a child is born in a prison cell with no medical help is if there are egregious and outrageous systematic failures allowed to coalesce over time.

365.    Defendant Semple's policies and practices of allowing an MOA he knew to be ineffective at helping prisoners in medical distress combined with his failure to appropriately supervise his staff regarding the MOA created an unreasonable risk of Eighth Amendment injury to Plaintiff Laboy and Plaintiff Laboy ex rel Baby N.

366.     Defendant Semple was clearly aware that such an unreasonable risk was created and existed.

367.     Defendant Semple was indifferent to that risk of Eighth Amendment injury to Plaintiff Laboy and Plaintiff Laboy ex rel Baby N.

368.     Plaintiff Laboy and Plaintiff Laboy ex rel Baby N.'s injuries resulted from Defendant Semple's policy and practice of failing to supervise employees regarding the implementation and monitoring of the MOA.

369.     This count is asserted against Defendant Semple in his individual capacity only.

370.     Defendant Semple was consciously aware of the fact that he created or allowed a substantial risk to inmates like Plaintiff Laboy and Baby N.

371.     Notwithstanding Defendant Semple's conscious awareness of the risk to inmates like Plaintiff Laboy and Baby N., he failed to take necessary and appropriate steps to reduce or eliminate the risk.

372.     Defendant Semple allowed a culture of deliberate indifference to run rampant through all of his prisons, so that all staff under his supervision ignored serious medical needs of prisoners like Plaintiff Laboy. Defendant Semple failed to supervise and manage his staff in a way so that every corrections officer understood and knew how to respond and prioritize medical health situations like that faced by Plaintiff Laboy.

373.     Defendant Semple violated Tianna Laboy's rights under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care in the care and treatment of Plaintiff Laboy.

374.     In the manner described above, Defendant Semple subjected Plaintiff Laboy to deliberate indifference in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

WHEREFORE, on Count XIX of this Complaint, Plaintiff Laboy demands judgment against Defendant Scott Semple and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

## Count XX - 42 U.S.C. § 1983 Deliberate Indifference Failure to Supervise as to Scott Semple in regards to Plaintiff Karine Laboy ex rel Baby N.

375.     Paragraphs 1 through 374 are incorporated by reference as if more fully set forth herein.

376.     Collectively, all of Defendant Semple's failures with regards to oversight of the MOA created a lax atmosphere of noncompliance, and wanton and willful disregard for human life within the UConn/CMHC. Defendant Semple needed to have implemented better supervision in the course of managing and implementing the MOA in order to prevent injuries such as experienced by Plaintiff Laboy ex rel Baby.

377.     Defendant Semple knew that inmates received inadequate care from the medical system he oversaw, yet Defendant Semple continued to engage UConn/CMHC as the main care provider for inmates like Plaintiff Laboy and subsequently her baby, Plaintiff Laboy ex rel Baby.

378.     Defendant Semple's failure to supervise employees properly regarding the implementation of the MOA directly resulted in the injuries to Plaintiff Laboy ex rel Baby N.

379.     The numerous violations of the community standard of care that UConn/CMHC subjected Plaintiff Laboy ex rel Baby N. to was a direct result of Defendant Semple's continued failure to oversee and monitor the MOA properly.

380.     Defendant Semple knew that failure to measure the performance of UConn/CMHC under the MOA presented inmates, and this case an unborn child of an inmate, with life threatening dangerous conditions, but Defendant Semple did not act.

381.     Defendant Semple's failure to act with the knowledge that his failure to act placed inmates in grave danger constituted deliberate indifference.

382.     Plaintiff Laboy ex rel Baby N. is an entirely foreseeable victim of Defendant Semple's deliberate indifference and Defendant Semple's failure to supervise his staff regarding the implementation of the MOA.

383.     Defendant Semple's policies and practices of allowing an MOA he knew to be ineffective at helping prisoners in medical distress combined with his failure to appropriately supervise his staff regarding the MOA created an unreasonable risk of Eighth Amendment injury to Plaintiff Laboy ex rel Baby N.

384.     Defendant Semple was clearly aware that such an unreasonable risk was created and existed.

385.     Defendant Semple was indifferent to that risk of Eighth Amendment injury to Plaintiff Laboy ex rel Baby N.

386.     Plaintiff Laboy ex rel Baby N.'s injuries resulted from Defendant Semple's policy and practice of failing to supervise employees regarding the implementation and monitoring of the MOA.

387.     This count is asserted against Defendant Semple in his individual capacity only.

388.     Defendant Semple was consciously aware of the fact that he created or allowed a substantial risk to inmates and their unborn children like Plaintiff Laboy ex rel Baby N.

389.     Notwithstanding Defendant Semple's conscious awareness of the risk to inmates like Plaintiff Laboy and subsequently her unborn baby, Plaintiff Laboy ex rel Baby N., he failed to take necessary and appropriate steps to reduce or eliminate the risk.

390.     Defendant Semple allowed a culture of deliberate indifference to run rampant through all of his prisons, so that all staff under his supervision ignored serious medical needs of prisoners like Plaintiff Laboy and subsequently her unborn baby, Plaintiff Laboy ex rel Baby N. Defendant Semple failed to supervise and manage his staff in a way so that every corrections officer understood and knew how to respond and prioritize medical health situations like that faced by Plaintiff Laboy and subsequently her unborn baby, Plaintiff Laboy ex rel Baby N.

391.     Defendant Semple violated Plaintiff Laboy ex rel Baby's rights under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the accepted standards of care.

392.     As a direct and proximate result of this defendant's unconstitutional acts and omissions, Baby N. experienced extreme physical pain and suffering and injury. It is foreseeable that these circumstances of her birth will cause Baby N. in the future shame, anguish and humiliation, and severe mental anguish, insult and indignity.

393.     In the manner described above, Defendant Semple subjected Plaintiff Laboy ex rel Baby N. to deliberate indifference in violation of rights secured to the plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.


WHEREFORE, on Count XX of this Complaint, Plaintiff Laboy ex rel Baby N. demands judgment against Defendant Scott Semple and prays for: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and (4) such other relief as the Court deems fair and equitable.

**Demand for Jury Trial**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Dated: March 3, 2019

Respectfully submitted,

/s/ *Kenneth J. Krayeske*
Kenneth J. Krayeske, Esq.
Kenneth J. Krayeske Law Offices
255 Main Street, Fifth Floor
Hartford, CT 06106
(860) 969-4911
 FAX: (860) 760-6590
attorney@kenkrayeske.com
Federal Bar # CT28498


/s/ *DeVaughn L. Ward*
DeVaughn L. Ward
Ward Law LLC
255 Main Street, 5th Floor
Hartford, CT 06106
860-869-4086
Fax: 860-471-8406
Email: dward@attyward.com
Federal Bar #CT30321