UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIANNA LABOY, et al., | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:19-cv-307 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | DECEMBER 5, 2019 |
| | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 31), MOTION FOR JOINDER (DOC. NO. 35), AND MOTION TO AMEND COMPLAINT (DOC. NO. 36)**

**I.    INTRODUCTION**

Plaintiff Tiana Laboy ("Laboy") gave birth at the York Correctional Institution in February, 2018, while in in the custody of the Department of Correction ("DOC").  In March, 2019, Laboy and her daughter, Baby N., through her guardian, filed the Complaint ("Compl.") (Doc. No. 1), alleging, inter alia, that staff and supervisors at the DOC acted with deliberate indifference to their medical needs.

Several motions are pending before this court.  This Ruling addresses the defendants' Motion for Summary Judgment (Doc. No. 31), the plaintiffs' Motion to Amend the Complaint (Doc. No. 36), and the plaintiff's Motion for Joinder (Doc. No. 35).

## II.  BACKGROUND

### A.  Facts[1]

Tiana Laboy has been incarcerated at the York Correctional Institute ("York") since August 15, 2017.  Defendants' Statement of Material Facts ("Defts.' Stat.") (Doc. No. 31-2) ¶ 1; Plaintiffs' Statement of Material Facts ("Pls.' Statement of Facts") (Doc. No. 54-1) ¶ 1.  When she was first admitted to York Correctional Institute, Laboy was about eight weeks pregnant.  Id.[2]  Laboy received some medical care for her pregnancy at York, id. ¶ 2.  The gravamen of the Complaint is that care was inadequate in the days leading up to the birth of her child.  See Compl. (Doc. No. 1).

Specifically, the Complaint alleges that, although Laboy experienced pain and vaginal discharge for several days in early February 2018, and informed York medical staff of her symptoms, medical and correctional staff failed to provide medical care.  Compl. ¶¶ 53-58.  On one occasion, Laboy was told she could not be seen by medical staff because she had not completed the appropriate medical form.  Id. ¶ 55.  A few days later, she was told she should return if and when her contractions were less than two minutes apart.  Id. ¶¶ 58.  Finally, after she spent the night of February 13, 2018,

---

[1] With the Motion for Summary Judgment (Doc. No. 31), the defendants filed a Statement of Material Facts pursuant to Local Rule 56(a) (Doc. No. 31-2).  Some of the facts presented there are admitted by the plaintiffs in their Statement of Material Facts in response.  See Plaintiffs' Statement of Material Facts (Doc. No. 54-1).  The undisputed facts are taken from the Defendant's Local Rule 56(a)(1) Statement and the plaintiffs' Local Rule 56(a)(2) Statement.  Unless otherwise noted, Laboy admits to the facts as stated.

Because the defendants' Local Rule 56(a)(2) Statement of Facts relates solely to the issue of exhaustion, this section also includes facts as alleged in the first Complaint, which provide context for the court's discussion of the proposed Amended Complaint.  The court does not rely on any facts in the Complaint that are not included in the Defendant's Local Rule 56(a)(1) Statement of Facts or the plaintiffs' Local Rule 56(a)(2) statement in its discussion of the Motion for Summary Judgment.

[2] Tianna Laboy was initially admitted to York as a pretrial detainee.  Laboy was sentenced on October 18, 2018, and is serving that sentence at York.  See Department of Correction Inmate Information, http://www.ctinmateinfo.state.ct.us/ detailsupv.asp?id_inmt_num=417372.

lying awake in pain, Laboy requested medical attention at 4:30am, and was told the doctor would see her at 7:30.  Id. ¶ 61.  Around 6:30 am that day, Laboy delivered her child into a toilet at the prison.  Id. ¶ 64-66.

An ambulance took Laboy and her baby to Lawrence and Memorial Hospital, where Laboy was shackled to a bed by her ankles for the duration of her four-day stay.  Id. ¶ 75.  After Laboy returned to York, she met with Commissioner Scott Semple, who apologized for her treatment and informed her that medical staff, who had been working the night between February 12 and February 13, had been "walked out."  Id. ¶ 113;  see also Pl.'s Stat. ¶ 17.

During her orientation, Laboy was informed about York's administrative remedies process.  Pls.' Stat. ¶ 13.  Nonetheless, the defendants state that, between August 17, 2018, and March 31, 2018, Laboy filed no grievances related to her treatment at York.  Defs.' Stat. ¶ 8, 12.  Laboy denies this statement, saying that she "filed a grievance or an appeal or a document of some sort expressing dissatisfaction with treatment in prison" because she appealed a ticket during her pregnancy.  Pls.' Stat. ¶ 8, 12.

B. Procedural History

Laboy filed the Complaint in March 2019.  Pls.' Statement of Facts ¶ 4.  The Complaint named as defendants Scott Semple, Commissioner of the DOC; Dr. Nelson, Medical Director for York; Dr. Tricia Machinski, OB/GYN specialist at York; Warden Antonio Santiago; and four John or Jane Doe defendants, two of whom are members of the medical staff and two of whom are correctional officers (collectively, "the defendants").  See Compl. at 1.  The Complaint includes 393 paragraphs, spanning over 65 pages.  Much of the Complaint's length can be attributed to the plaintiffs' decision to include over twenty counts, which fall into five general categories: (1) eight

counts, each corresponding to a different defendant, alleging that the defendant was deliberately indifferent to Tianna Laboy's medical needs in violation of the Eighth and Fourteenth Amendments; (2) two counts of state-law negligence; (3) three counts alleging that Baby N. had been falsely imprisoned in violation of the Fourth Amendment; (4) seven counts, each corresponding to a different defendant, alleging that the defendant had been deliberately indifferent to Baby N.'s medical needs in violation of the Eighth and Fourteenth Amendments; and (5) two counts asserting supervisory liability against defendant Semple.

In the eight months since the Complaint was filed, the parties have submitted numerous filings. The defendants filed their Answer (Doc. No. 18), with affirmative defenses, in late June, and their Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 31), on August 28. The plaintiffs, on August 30, filed three motions: (1) a motion challenging the designation of discovery materials as "confidential," see Motion (Doc. No. 32); (2) the Motion for Joinder of defendants identified through discovery (Doc. No. 35); and (3) the Motion to Amend the Complaint (Doc. No. 36). Also pending are several Motions to Seal. See Motion to Seal (Doc. No. 33) (moving to seal motion challenging "confidential" designation); Motion to Seal (Doc. No. 37) (moving to seal proposed Amended Complaint). The defendants oppose the Motion to Amend the Complaint. See Defendants' Memorandum in Opposition to Motion to Amend ("Defs.' Mem. in Opp. to Mot. to Amend") (Doc. No. 47). The plaintiffs have filed an Opposition to the Motion for Summary Judgment (Doc. No. 51), which they have also Moved to Seal (Doc. No. 52). The court has granted multiple extensions of time to both sides. See, e.g., Order (Doc. No. 26) (extending time for the plaintiffs to Amend the Complaint

and the defendants to respond to discovery); Order (Doc. No. 43) (extending time for plaintiffs to respond to the Motion for Summary Judgment); Order (Doc. No. 45) (extending time for defendants to respond to Motion to Amend Complaint).

### III.  DISCUSSION

#### A.  Motion to Amend Complaint

##### 1.  Standard of Review

First, the court considers the Motion to Amend the Complaint (Doc. No. 36), which the defendants oppose (Doc. No. 47).  Because Laboy filed the Motion to Amend the Complaint within the—extended—deadline set by this court in its Scheduling Order, that Motion is governed by the liberal standard of Federal Rule of Civil Procedure 15(a). Pursuant to Rule 15(a), a party may amend its pleading with the court's leave, and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15.  As the Supreme Court explained in Foman v. Davis,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962);  see also Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.")  The Second Circuit has referred to prejudice as among the "most important" reasons to deny leave to amend.  AEP Energy Servs. Gas Holding Co. v.

Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

        2.    Analysis

The defendants do not argue that there has been "undue delay" or that Laboy had a "dilatory motive," Foman, 371 U.S. at 182.  Nor have there been "repeated failure[s] to cure deficiencies by amendments previously allowed," id., as this is the plaintiffs' first proposed Amended Complaint.  Therefore, of the Foman factors—which are not exhaustive—the defendants are left with two potential arguments why this court should deny leave to amend: "undue prejudice to the opposing party by virtue of allowance of the amendment" or "futility of amendment."  Id.

The defendants do not argue that they would be unduly prejudiced by the proposed amendments.  See Defs.' Mem. in Opp. to Mot. to Amend.  The court agrees with Laboy and Baby N. that allowing leave to amend would not unduly prejudice the defendants.  See Pl.'s Mem. in Support of Mot. to Amend (Doc. No. 36-1) at 4.  "Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  AEP Energy Servs., 626 F.3d at 725–26 (2d Cir. 2010) (quoting Fluor Corp., 654 F.2d at 856); see also Solomon v. Adderley Industries, Inc., 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013) ("[The defendant] will not have to expend significant additional resources because the same claims in the original complaint are being alleged against the new parties and further (limited) discovery itself is not an adequate ground to deny an amendment to a complaint.") (citations omitted).  Here, although the Amended Complaint adds additional detail, it does not include any new claims based on facts of which the defendants were not

aware at the time the initial Complaint was filed.³  The parties have until April of 2020 to complete discovery, and the court sees no reason why the additional proposed amendments would delay the resolution of the dispute.

Rather than arguing that they would be prejudiced by the amendment, the defendants argue that the Proposed Amended Complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure, and that amendment would be futile.  Def's. Mem. in Opp. to Mot. to Amend at 4, 7.  Regarding Rule 8, the court agrees with the defendants that the proposed Amended Complaint does not comply with Rule 8's requirement that pleadings contain a "short and plain" statement of the grounds for the court's jurisdiction, the claim, and a demand for the relief sought.  Fed. R. Civ. P. 8.  However, the court is not aware of any cases suggesting that leave to amend—which, as discussed, is analyzed under the liberal standard of Rule 15—should be denied where a complaint is unnecessarily prolix.  Salahuddin v. Cuomo, 861 F.2d 40 (2d. Cir. 1988), on which defendants rely, considered whether a court could dismiss an unusually "prolix" complaint for noncompliance with Rule 8 without granting leave to amend.  Salahuddin, 861 F.2d at 43.  On the facts before it, the Second Circuit concluded that dismissing without leave to amend was an abuse of the district court's discretion.  Id.  The Second Circuit did not consider whether it would be an abuse of discretion for a

---

³ The proposed Amended Complaint makes several changes.  It eliminates some of the prolixity of the Initial Complaint by removing the state-law negligence claims and removing all claims against defendants Nelson and Santiago.  See Proposed Am. Compl. (Doc. No. 39-1) at 1, 39.   It also replaces the unnamed defendants previously identified as John or Jane Doe with Correctional Officer Alberto Ortiz, Correctional Officer Silvia Surreira, Registered Nurse Michelle Fiala, and Registered Nurse Brianna Simmons.  Id. at 1.  Throughout, the proposed Amended Complaint includes additional detail, including, inter alia, several additional paragraphs listing Correctional Managed Health Care or DOC policy with which medical staff and correctional officers failed to comply, id. ¶¶ 38-55; additional allegations about the actions medical staff did not take in the days leading up to Baby N.'s birth, id. ¶¶ 61-62, 64, 70; descriptions of the Security Division Investigation conducted after Baby N.'s birth, id. ¶¶ 115-21; and additional information about a consent decree that has been in place since 1988, id. ¶¶ 122-139.

7

district court to <u>deny leave to amend</u> to avoid unwanted detail.  Finding no authority to do so, and in light of Rule 15's liberal standard that leave should be "freely given," the court will not deny leave to amend on the ground that the proposed Amended Complaint is unnecessarily long.[4]

The court also declines to deny leave to amend on futility grounds.  The defendants argue that the proposed amendments to the Complaint are futile because: (1) Tianna Laboy has failed to exhaust her administrative remedies; (2) government officials, namely defendant Semple, may not be held liable under section 1983 for the conduct of their subordinates under a theory of <u>respondeat superior</u>; and (3) the defendants are entitled to qualified immunity.  Def's. Mem. in Opp. to Mot. to Amend at 7-13.  In the court's view, the supervisory liability and qualified immunity arguments would be better addressed on a motion to dismiss.  Denying leave to amend will not change the underlying allegations in the first Complaint, which could still be subject to dismissal for failure to establish supervisory liability or on qualified immunity grounds.  Any discussion of supervisory liability or qualified immunity at this stage would simply foreshadow how this court would rule if a motion to dismiss were before it and would need to be repeated if such a motion were filed.  Therefore, the court will not address qualified immunity or supervisory liability here.  To the extent that the defendants argue

---

[4] The defendants also suggest that the "unnecessary and immaterial allegations" in the proposed amended complaint "should be stricken."  Defs.' Mem. at 6.  The defendants can raise this argument in a Motion to Strike, which, following Second Circuit caselaw, the court will grant if there is no admissible "evidence in support of the allegation," <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir.1976), the allegations "have no bearing on the issues in the case," and "permit[ting] the allegations to stand would result in prejudice to the movant."  <u>Tucker v. American Intern. Group, Inc.</u>, 936 F. Supp. 2d 1 (D. Conn. 2013) (citations omitted).

that the amendments are futile because Laboy has failed to exhaust her remedies, the court directs the parties to its discussion of the exhaustion requirement, infra at 8-13.

In summary, pursuant to the liberal standard of Rule 15 of the Federal Rules of Civil Procedure, this court must give leave to amend "freely" when justice so allows. Fed. R. Civ. P. 15. Because the defendants would not be prejudiced by the amendment of the Complaint, and because defendants' arguments regarding supervisory liability and qualified immunity are better addressed in a dispositive motion, the court **grants** the plaintiffs' Motion to Amend the Complaint (Doc. No. 36).

B. Motion for Joinder

The plaintiffs have also filed a Motion for Joinder (Doc. No. 35), seeking to join Correctional Officer Alberto Ortiz, Correctional Officer Silvia Surreira, Registered Nurse Michelle Fiala, and Registered Nurse Brianna Simmons to "replace" the unnamed John and Jane Doe defendants in the Complaint. Mot. for Joinder at 3-4. As the court has granted the plaintiffs' Motion to Amend (Doc. No. 36), which substitutes Ortiz, Surreira, Fiala, and Simmons for the unnamed parties, the Motion for Joinder is **granted**.

C. Motion for Summary Judgment

1. Standard of Review

In the Motion for Summary Judgment (Doc. No. 31), the defendants argue that Laboy is prohibited from bringing this action because she has not exhausted her administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Mot. for Summ. J. at 1. A motion for summary judgment may be granted only where the moving party can establish that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64,

71–72 (2d Cir. 2016). The court "resolve[s] all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

      2.      Analysis

Pursuant to the PLRA, an individual must exhaust "'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S.C.t 1850, 1854 (2016) (quoting 42 U.S.C. § 1997e(a)). The crux of the dispute between the parties here is whether an administrative remedy was "available."

In a similar case, the Seventh Circuit concluded that a woman could sue the staff at an Illinois county jail for deliberate indifference to her need for proper prenatal care and prompt transport to a hospital for delivery, regardless of the fact that she had not exhausted the administrative procedure for a remedy. See White v. Bukowski, 800 F.3d 392 (7th Cir. 2015). In White, the plaintiff was almost eight months pregnant when she was first detained in jail. 800 F.3d at 394. When she went into labor, she was taken to the hospital and delivered her baby, who suffered from birth defects. Id. The mother later sued jail staff for failing to take a proper medical history, failing to respond to her requests for medical assistance, and for failing to react quickly enough when she went into labor. Id. The District Judge dismissed the suit for failure to exhaust available administrative remedies. Id. at 393. On review, the Seventh Circuit began by noting that "[t]he purpose of a prisoner's filing a grievance is to obtain a change of some sort— to obtain better medical care, for example." White, 800 F.3d at 394. For White, however, no such change was possible:

> [S]uppose the plaintiff had suspected that [her child's birth defects] were attributable to a mistreatment that she had received in the jail . . . What good

10

> would it have done her to file a grievance? She wasn't about to become pregnant again . . . could she have gained from filing a grievance?

Id. at 394-95. Stressing section 1997e(a)'s rule that no action can be brought "until such administrative remedies as are available are exhausted," id. at 395, the Seventh Circuit reasoned that, "if one has no remedy, one has no duty to exhaust remedies." Id. In its view, the caselaw suggested that "a grievance must be filed" under section 1997e "as long as there is something the jail or prison could do in response to a grievance." Id. After the plaintiff gave birth, there was "no remedy within the power of the jail to grant," and thus, section 1997e's exhaustion requirement did not apply to require dismissal. Id. This reasoning aligns with the Second Circuit's reasoning in Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004), in which the Second Circuit explained that the PLRA requires exhaustion of only those remedies that are "available" to the inmate, that is, that afford the possibility of some relief for the action of which the individual complains. Abney, 380 F.3d at 667 (quoting Booth v. Churner, 532 U.S. 731 (2001)).

White was decided a year before the Supreme Court's decision in Ross v. Blake, 136 S.C.t 1850, 1857 (2016). In Ross, the Court held that the statutory text and history of the PLRA's exhaustion requirement foreclose "special circumstances" exceptions to the exhaustion requirement. However, as the Ross Court explained, "the PLRA contains its own, textual exception to mandatory exhaustion": an individual "must exhaust available remedies, but need not exhaust unavailable ones." Ross, 136 S. Ct. at 1859. Thus, although Ross forecloses "special circumstances" exceptions, it does not foreclose the application of White in this case, because White focused on the "availability" of a remedy. See generally White, 800 F.3d at 395-396 (repeatedly emphasizing that a prisoner must exhaust "administrative remedies as are available"

11

and that there were no remedies available to a prisoner who had already given birth); Doe v. County of Milwaukee, 14-cv-200 (JPS), 2017 WL 1843262, at *7 (D. Wis. May 5, 2017) (concluding that "Ross leaves room for White" and applying White to deny summary judgment).[5]  Indeed Ross recognizes the PLRA's exhaustion requirement does not apply to "unavailable remedies." 136 S. Ct. at 1859.

In support of their Motion for Summary Judgment, the defendants argue only that administrative remedies were available because York's grievance procedures were "not so opaque" that Laboy could not understand them. Defs.' Mem. in Support of Mot. for Summ. J. (Doc. No. 31-1) at 11 (citing Riles v. Buchanan, 656 Fed. App'x 577, 581 (2d Cir. 2016)). However, an administrative remedy may be "unavailable" even in cases where the plaintiff clearly understands the administrative process. See, e.g., Ross, 136 S. Ct. at 1859-60 (discussing three scenarios in which relief may be unavailable, including where the process is too opaque, as well as cases in which administrators thwart inmates from using the process through misrepresentation and cases where the process, though clear, is a "dead end").

---

[5] Nor does White conflict with Second Circuit precedent. In White, the Seventh Circuit distinguished Ruggiero v. County of Orange, 467 F.3d 170 (2d Cir. 2006), a Second Circuit case that held that the plaintiff had not exhausted his remedies and rejected his arguments that he should be excused from doing so either because he ultimately received the relief he requested—a transfer to another facility—or because he was not provided with an inmate handbook. Ruggiero, 467 F.3d at 176. Ruggiero is distinguishable from this case, as well, because Ruggiero's claims arose out of "several incidents in which . . . correctional officers . . . employed excessive force against him" over the course of a year. Id. at 172. After those incidents, but before Ruggiero's case was decided, the Supreme Court made clear that exhaustion was required even where the claim related to a single instance of mistreatment. Id. at 173 (citing Porter v. Nussle, 534 U.S. 516 (2002)). The Second Circuit reasoned that, for Ruggiero, additional relief, such as a change in policy or disciplinary actions against the relevant officers, was available. Thus, the exhaustion requirement applied. Id. at 177. A policy change or the discharge of an officer could have helped Ruggiero, because he continued to be incarcerated and would have to interact with those officers, under those policies, in the future. Here, however, a change in the policies regarding pregnant inmates or the discharge of OBGYN staff could not have helped Laboy with her pregnancy—once her child was born, the situation that led to the alleged deprivation of her rights could not be repeated because Laboy would not again become pregnant in prison.

Under the circumstances of this case, there was no "available" remedy.  As in White, after Laboy's baby was born, there was nothing she or the prison could do to change the facts surrounding its birth, which remain in dispute.[6]  Laboy "had no opportunity to grieve" the failure to provide her medical care "until after the harm done . . . was complete and could not be undone by the defendants." Id. at 396.  She "wasn't about to become pregnant again," and thus, she had nothing to gain from filing a grievance.  White, 800 F.3d at 394-95.  An "available" remedy is one that is "capable of use for the accomplishment of a purpose," and "accessible" or obtainable.  Ross, 136 S. Ct. at 1958.  Here, filing a grievance could not have accomplished any purpose for Laboy.  On the facts of this case, there was no "available" remedy for Laboy to exhaust.[7]

In light of Ross v. Blake, Laboy had no available remedies to exhaust. Therefore, the defendants' Motion for Summary Judgment (Doc. No. 31) is denied.

---

[6] The defendants do not state, in their Statement of Material Facts, that Laboy gave birth at York. Defs.' Statement of Facts (Doc. No. 31-2).  They simply state facts related to the grievance procedures at York, and Laboy's failure to use those procedures.  The plaintiffs' Statement of Material Facts, however, includes additional facts and refers to the birth in prison.  See Pl.'s Stat. ¶ 16, 19.  For the purpose of the Motion for Summary Judgment, the court accepts that Laboy gave birth in prison.

[7] In Ross, the Supreme Court "note[d] as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief:" first, where the administrative process "operates as a simple dead end;" second, where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and third, where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  136 S. Ct. at 1859-60.  The plaintiff argues that this case could fit into either the first or third Ross exceptions, because Semple met with Laboy after she returned to York.  See Pl.'s Opp. to Mot. for Summ. J. (Doc. No. 51) at 12-17.  However, as the plaintiff notes, citing the Second Circuit, the three circumstances in Ross do not appear to be exhaustive.  Id. at 17 (citing Williams v. Correction Officer Priatno, 829 F.3d 118, 123 n. 2 (2d Cir. 2016)).  The court need not fit this case into one of the three Ross examples to conclude that no remedy was available.

## IV. CONCLUSION

For the reasons discussed, the plaintiffs' Motion to Amend the Complaint (Doc. No. 36) is **GRANTED**, and the plaintiffs' Motion for Joinder (Doc. No. 35) is **GRANTED**. The defendants' Motion for Summary Judgment (Doc. No. 31) is **DENIED.**

**SO ORDERED.**

Dated this 5th day of December, 2019, at New Haven, Connecticut.

                         /s/ Janet C. Hall
                         Janet C. Hall
                         United States District Judge